IN THE MATTER OF THE APPLICATION OF CHI-
UGI YOSHIDA FOR A WRIT OF HABEAS
CORPUS.

December 5, 1913.

*Immigration—Conclusiveness of findings of immigration officers as to right of alien to landing, discussed.*

*Habeas Corpus*:   On motion to dismiss petition for writ.

. *J. Lightfoot* for petitioner.
*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

DOLE, J. (Orally). I have listened attentively to the argument of counsel for petitioner and he has given us a great deal of excellent law. His discussion of the question would, to my mind, be more appropriate before the immigration officers than here, because it is not a review of the case in the ordinary sense. Many of these cases would be, I think, without a standing in court if it were not for the copy of the proceedings before the board of inspectors attached to the petition. I feel that the mere allegation of unfairness,—of a semblance of a trial,—or of illegality, is not sufficient to justify the court in using this great power of habeas corpus. Such allegation should be followed by an explanation stating wherein there was unfairness, alleg-

ing certain facts of unfairness or illegality. In these cases
such allegation is generally founded upon a copy of the
proceedings before the board of inspectors. I believe it
would be a good practice to state such explanation briefly in
the petition.

The simple question before this court is whether there
has been shown unfairness or illegality, either of which defi-
nitely shown would give this court jurisdiction. It is within
the discretion of the immigration officers to weigh testi-
mony and to act thereon according to their judgment, if
there is anything to act upon.

The former case in which this court made the ruling
which counsel for petitioner has cited with a good deal of
satisfaction, and which I feel was a sound ruling, was a case
in which the question of domicil was vital and absolutely
no question relating to domicil had been asked, and the
ignorant applicant for admission, not knowing anything
about the law of domicil, was simply left in the lurch,
stranded so to speak, for want of that little help which I
felt that the government was bound to give him.
*In re Jiro Miyagusuku,* ante p. 344. In making that
ruling, I even felt that it may have been some-
what radical, and was not sure that it would be sustained
on appeal. I am not sure now. But the case before the
court is a case in which the immigration authorities did
go into the question which was at issue, which was the
question whether this applicant had participated in the
earnings of a prostitute. Now they went into that to a
considerable extent and there was testimony which they
had a right to consider. The applicant on being asked
whether he had received any aid from his wife since she
had been practicing prostitution, said, "Well, I can't say
entirely no aid from her; I had some," and she said, on
being asked what the reason was that she took up that
practice, "I tell you my husband turned to sickness and I
wanted to endeavor to cure him of his illness and need

money for the doctor." Now, there is an admission from the husband,—the applicant, and testimony from the wife, which the inspector had a right to consider.

Counsel for petitioner very properly argues that there was evidence which would tend to show that all this happened before she took up this practice. Of course the inspector had a right to decide that the uncertainty in their testimony in regard to time did not neutralize or overweigh this pretty significant testimony as to the fact of his receiving such aid. Counsel argues that the aid was very slight, probably assistance a wife would naturally give. I do not think this court has the jurisdiction to say that such aid should have been substantial aid; for instance you cannot draw a line between slight aid and substantial aid. You cannot draw a line in the matter of testimony as to its sufficiency in a case like this. The case to which I have referred, in which the court ruled that there was nothing which justified the immigration officers in their decision, is very different from this case in which there is testimony, and I think you will see the difficulty the court will have in trying to draw a line where there is testimony which is weakened by other statements, as to how far such testimony should go before it is sufficient. An examination of this case might go on for days and become very exhaustive. And has the court a right to say that such exhaustive examination must take place before there is sufficient evidence for the inspectors to act upon? How little, how much? No two judges would have the same view as to where to draw the line. The fact is that there is testimony in regard to the issue in this case upon which the inspector weighing it decided the case. This court cannot therefore review it or take jurisdiction because perhaps if the case were tried on its merits before this court, the court would have decided differently. The possible difference of opinion in a matter of this kind is no justification for the discharge of the prisoner.

In regard to the sacredness of the right to habeas corpus, I think I agree with all that has been said and yet it is established that the United States may create its own executive officers to deprive persons of their liberty upon an examination of their own, and any argument that it is extreme and harsh and severe is hardly an argument for a right to the writ; and in any case this court has no discretion in that matter unless it comes to a question of the constitutionality of that law. We have to accept the law as it is given us and act upon it.

I have very carefully weighed the case as it went on and it seems to me unnecessary for me to write an opinion on it, but favorable to all interests to dispose of it at once. I feel that no jurisdiction has been shown, no justification for the court to take jurisdiction, and the motion to dismiss is allowed.